IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| NATHAN D. WILKINSON, | ) ) ) | |
| Petitioner, | ) ) | Case No. CV 07-301-S-CWD |
| v. | ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) ) | |
| Respondent. | ) ) ) | |

## Introduction

Currently pending before the Court for its consideration is Petitioner Nathan D. Wilkinson's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed July 12, 2007. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court affirms the decision of the Commissioner.

### I.
### Procedural and Factual History

Petitioner was injured at work on February 8, 1999, when a 40-50 pound box of candy fell upon the back of his neck and right shoulder as he was bending over to pick something up.

**Memorandum Decision and Order - Page 1**

Although after the accident he did not black out or experience pain, he later developed pain in his neck, jaw, and right arm, as well as debilitating and chronic headaches that he attributed to the accident.  Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 16, 2004, alleging onset of disability as of January 3, 2002, due to jaw pain, degenerative disc disease of the cervical spine, headaches, and chronic pain disorder.  Petitioner's application was denied initially and also upon reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) John Arkoosh held a hearing on September 27, 2006, taking testimony from Petitioner and vocational expert Anne Aestum.  (AR 419-472.)  ALJ Arkoosh issued a decision finding Petitioner not disabled on February 1, 2007.  (AR 12-29.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 4-6.)  Petitioner appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 30 years of age.  He has a high school education and his past relevant work includes construction worker, materials handler, laborer, truck driver, and pump station operator.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of January 3, 2002.  At

step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's tempromandibular derangement (TMJ), degenerative disc disease of the cervical spine, headaches, and chronic pain disorder are "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was not able to perform his past relevant work as either a truck driver, laborer, construction worker, material handler, or pump station operator.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner disabled at step four, the ALJ proceeded to step five. At step five, the ALJ determined that the Petitioner's testimony was not entirely credible and concluded he had the RFC to perform light unskilled work, such as cashier or survey worker, and that significant numbers of these jobs existed in the national economy. Therefore, the ALJ found Petitioner not disabled.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld

even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the fourth and fifth steps of the sequential evaluation process. Specifically, he contends that the ALJ improperly rejected the conclusions of two of his treating physicians, Dr. Hicks and Dr. DeTemple, who opined that Petitioner was precluded from engaging in gainful employment. Petitioner also contends that the ALJ improperly rejected the Vocational Expert's testimony, which in turn relied upon the ALJ's assessment of Petitioner's credibility. Petitioner contends that if the ALJ had properly assessed Petitioner's complaints, the RFC assessment would have resulted in a finding of disability because Petitioner's pain and need to use oxygen throughout the day would force him to miss work or take longer than usual breaks, thereby precluding all work. The Court will address each of these arguments in turn.

A.      **ALJ's Evaluation of Petitioner's Treating Physicians.**

Petitioner contends that the ALJ improperly rejected the conclusions of his two treating physicians, Dr. Hicks and Dr. DeTemple, both of whom Petitioner claimed expressed opinions that Petitioner was precluded from "any type of work" due to his debilitating pain and cluster headaches. While the ALJ noted these opinions, he rejected Dr. Hicks's opinion because it was unsupported by the records as a whole, and it was contradicted by Dr. DeTemple's opinion that Petitioner had the RFC for light work.

Ninth circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 ((9th Cir. Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th

Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Dr. Hicks treated Petitioner from January 2001 through September 2004. During that time, Dr. Hicks concluded, based upon the Petitioner's subjective complaints, that Petitioner's pain was significant and that he was unable to withstand the rigors of work without having to eventually cease working. (AR 321.) Dr. Hicks also noted that Petitioner unsuccessfully tried vocational rehabilitation training, and had to quit because of neck pain, shoulder pain, and TMJ pain. (AR 321.) On March 1, 2005, Dr. Hicks stated that "[i]t is not recommended that [Petitioner] do any type of work." (AR 316.)

The ALJ must give specific and legitimate reasons for not giving the opinion of Dr. Hicks controlling weight, which he did. The ALJ noted in the medical record that an examining physician as well as Petitioner's current treating physician, Dr. DeTemple, disagreed with Dr. Hicks's conclusion. Dr. Pilch, a neurologist, examined Petitioner on June 10, 2005, noting that he walked from the waiting area to the exam room unassisted. (AR 365.) His examination that day was normal. (AR 367.) In Dr. Pilch's opinion, Petitioner was "capable of performing some

**Memorandum Decision and Order - Page 7**

useful work." (AR 367.) While Dr. DeTemple, Petitioner's current treating physician, did note that Petitioner reported between five and nine cluster headaches daily, (AR 406), Dr. DeTemple filled out a RFC assessment on September 28, 2006, consistent with an opinion that Petitioner had the capacity to perform light work. (AR 402-405). Dr. DeTemple noted that Petitioner's condition had improved, and that he only used oxygen to relieve his headaches for ten minutes at a time. (AR 404.)[1]

Dr. Hicks's own treatment notes, as well as the treatment notes of other examining physicians, also do not support his opinion that Petitioner is precluded from all work. During the height of Petitioner's symptomology, Dr. Hicks's records consistently showed normal examination findings despite Petitioner's subjective complaints of debilitating pain. On October 29, 1999, Petitioner's MRI scan of his cervical spine was normal. (AR 139.) Despite "sharp pain" in his neck, a second cervical spine image ordered by Dr. Hicks on March 7, 2002, again showed normal findings. (AR 344.) Dr. Dille, a treating physician from the South Idaho Pain Institute, noted on December 20, 1999, that Petitioner was improving and that "as far as I can tell he is ready to return to work." (AR 133). Dr. Knoebel, an orthopaedic consultant, examined petitioner on April 4, 2001, found essentially normal findings upon examination, and opined that Petitioner did not suffer from any temporary or total impairment from an orthopaedic standpoint that would preclude a return to work. (AR 148-154.) Finally, the ALJ noted that Dr. Hicks treated Petitioner during the time of his workers compensation litigation and last examined him in 2004, yet the note relied upon by Petitioner was written in 2005.

---

[1] Dr. DeTemple's opinion is in contrast to Petitioner's argument in his brief. Mem. at 4, Docket No. 12. To the extent Petitioner argues that Dr. DeTemple opined that Petitioner could not work, that argument is not credible due to Dr. DeTemple's RFC assessment that Petitioner could engage in light work despite his limitations. (AR 402-405).

**Memorandum Decision and Order - Page 8**

The ALJ also noted that Dr. Hicks's opinion was not supported by Petitioner's activities of daily living. This is another item that can be considered by the ALJ in determining what weight to give to a physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ noted that Petitioner testified at the hearing that he used his oxygen in the morning, and went out of the house during the day to perform household errands. He also socializes frequently with his family.

The ALJ has stated specific and legitimate reasons for not assigning controlling weight to Dr. Hicks's conclusory opinion, including that Dr. Hicks's own treatment notes did not support his finding and evidence of Petitioner's activities of daily living. Additionally, the record as a whole does not appear to support Dr. Hicks's opinion. Finally, if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court therefor concludes that the ALJ's decision is supported by substantial evidence and was not the product of legal error.

B.  **Petitioner's Credibility**

Petitioner argues that there was an insufficient explanation given for rejecting his complaints and testimony about the pain he experienced on a daily basis, and his need to use oxygen throughout the day to relieve the pain caused by his headaches. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

**Memorandum Decision and Order - Page 9**

2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See*

Soc. Sec. Ruling 96-7p.

In this case, the ALJ properly evaluated Petitioner's credibility concerning the intensity, persistence, and limiting effects of his headaches.  The ALJ noted inconsistent statements between Petitioner's testimony and what he had previously told physicians that undermined his credibility.  Petitioner alleged that he needed to use oxygen approximately four times per day, a factor which would preclude work according to the Vocational Expert.  However, even though he reported he suffered from five headaches a day in May 2006, Petitioner stated to his physician they were better with oxygen treatment.  The ALJ noted on October 25, 2006, that Petitioner reported he only used the oxygen once in the morning before he left the house.  On January 24, 2006, Petitioner noted to Dr. DeTemple that his headaches "always occur in the evening," which the ALJ noted undermined Petitioner's credibility that he suffered during the day to the extent reported at the hearing.  And, the ALJ noted that while Petitioner testified at the hearing that he used his oxygen four times a day, one month later during a consultative examination in October 2006, he reported only using it once per day.  Finally, the ALJ noted that despite Petitioner's complaints that he awoke frequently during the night due to headaches, he did not nap during the day nor did he report to Dr. Kaufman on October 25, 2006 of any need to use oxygen during the daytime.

There were other inconsistencies noted by the ALJ as well.  For example, the ALJ noted that at one point, Petitioner told his doctors that acupuncture relieved his pain "50%," while he told another doctor that it did not help "at all."  (AR 22.)  Petitioner's reports to his doctors that the use of a splint did not relieve his paint contradicted reports to Dr. Houston, D.D.S., that splint therapy relieved his headaches.  (AR 22).  The ALJ further noted that Dr. Spencer's notes on

**Memorandum Decision and Order - Page 11**

January 20, 2003, indicated inconsistencies between clinical findings, of which there were none, and Petitioner's reports of jaw pain. (AR 22.). Dr. Romriell, DMD, who treated Petitioner's TMJ, also noted the lack of clinical findings, as did Dr. Baker on November 7, 2003, who reported that the lack of clinical findings are inconsistent with a TMJ condition. (AR 22, 268.)

Based upon the Petitioner's inconsistent statements to his physicians and his testimony at the hearing, the ALJ concluded that Petitioner's statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible. As stated above, it is the ALJ's job to determine credibility. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound. There is substantial evidence in the record to support the ALJ's finding that the Petitioner was not fully credible, as the ALJ took into consideration the objective medical evidence, opinions of physicians that Petitioner was not precluded from all work, and inconsistent statements regarding symptoms and limitations.

The Court finds that, based on the above, there is substantial evidence in the record to support the ALJ's finding that Petitioner was not fully credible. The Court will not engage in second-guessing when the ALJ's decision is sound and there is substantial evidence to support it.

C.	**Residual Functional Capacity and Hypothetical Posed to Vocational Expert.**

Petitioner asserts that the ALJ's finding that he can perform light work is in error. The Petitioner contends that the hypothetical posed to the vocational expert did not include all his limitations, specifically that he would miss work due to pain because he would need to take longer than the prescribed fifteen minute breaks to use his oxygen, thereby precluding all work.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 417 F.3d at 1217.

The ALJ's residual functional capacity finding and the hypothetical he proposed to the vocational expert are supported by substantial evidence in the record. The AJL need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2000). In his hypothetical, the ALJ did include limitations imposed by Petitioner's pain complaints, including his headaches and his oxygen use as they were supported by the record. (AR 467-470.) As for Petitioner's contentions that the ALJ did not address or consider his need for oxygen use because of his debilitating and chronic

Memorandum Decision and Order - Page 13

headaches, these limitations are not supported by substantial evidence in the record and accordingly, the ALJ did not need to include them in his hypothetical or RFC determination.

The ALJ also noted that Petitioner's current treating physician, Dr. DeTemple, submitted an RFC assessment on September 28, 2006, which supported the conclusion that the Petitioner could perform light work.  Without substantial evidence in the record to support the limitations claimed by Petitioner that were caused by oxygen use, the ALJ did not err in excluding them from his hypothetical.  Additionally, the fact that the only evidence of these limitations are statements from the Petitioner, who the ALJ determined to not be fully credible, is further support for the ALJ not affording the statements much weight in his determination.  The ALJ then relied on the vocational expert's testimony, as permitted by the regulations, regarding Petitioner's ability to perform light work.  (AR 467-470, 26-27.)  *See* 20 C.F.R. § 404.1566(e).

The ALJ considered the record as a whole, incorporated his determination that Petitioner was not fully credible, and included the limitations supported by substantial evidence in the record.  The law provides that the ALJ does not need to include unsupported limitations, which is precisely what occurred in this case.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

**Memorandum Decision and Order - Page 14**

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.



DATED: September 19, 2008

Honorable Candy W. Dale
United States Magistrate Judge